Next case is Circuit Check v. QXQ Inc. 2015-1155. Mr. Merrill, good morning, sir. May it please the Court, on behalf of Circuit Check, we appeal the District Court's grant of judgment as a matter of law, following a verdict of willfulness, non-obviousness, and awarding both lost profits and reasonable royalty damages. The District Court erred in granting judgment as a matter of law. Instead of taking the evidence-presumed findings which supported the verdict of non-obviousness, the District Court made its own credibility determinations. For example, on the issue of whether QXQ copied the invention, the District Court based its decision on the credible testimony of the defendant QXQ's employees who stated that they had independently made the accused product themselves. The question of obviousness was submitted to the jury by general verdict form, without objection by either party. On the JMO standard, as this Court knows from the Spectralytics v. Cordis case, which cites the Reed's plumbing, the standard is that the Court must presume all findings that are supported by substantial evidence and must disregard evidence favorable to the moving party. So the question is not whether the jury should have done what they did. The question is whether they could have. If the jury could have found the invention non-obvious, then the District Court must presume that they did. In this case, the jury certainly had ample evidence to make the decision that they did. To begin with, the jury could have concluded that the concept of marking by removal was not technically pertinent to the invention. The defendants alleged that the general concept of marking by removal invention involves a method of marking a piece of equipment used to test circuit boards. The defendants relied upon evidence not from the field of art. They relied upon general rock carvings, engraved signage, and something known as Prussian blue. It's a marking used in a... The judge said this invention was known to cavemen. He said it would have been obvious to... And vandals. Let's not leave out the vandals. A vandal that would key a car. That the general concept of marking by removal would have been obvious, and therefore the invention is obvious in his reasoning. And maybe the jury could have found it obvious, but they didn't. And the reason they didn't is they heard evidence from the inventor and other employees of CircuitCheck saying that that prior art that was cited wasn't pertinent to the invention. And one of the reasons that they testified the way they did is because this invention, if you use too much coating or paint on the interface plate, it'll foul up the expensive test equipment. It's a half million dollar piece of equipment. The paint can short the circuit and it'll foul the test results. If the paint comes off. If the paint flakes and chips, which it can under the terms in which the machine is used. So there was testimony that the prior art taught away from the invention. One of the prior art references was a document called the Plexus Specification. And it said, and this is the only prior art reference that combined both marking by paint and marking by removal. And the only prior art reference that combined the two said that you should drill first and then mark, which is the opposite of the invention. The inventor testified that it was opposite and contrary to the invention to drill first and then paint because that goes away from the invention. Obviously, if you drill first and paint, you cannot then coat the entire surface. The jury was instructed on teaching away. The jury was instructed on what is relevant prior art. The jury was instructed on secondary considerations and the jury could have come to the conclusion it did. The jury could have also come to the conclusion that there was a lack of motivation for a person of skill in the art to combine the prior art, the general concept and apply it in the way in which it was used in this invention. What you're saying is that the judge's reliance on common sense does not trump the jury's verdict. I do, Your Honor. Common sense to one person may not be common sense to another. The jury is the tool that should determine what common sense is. If it had been common sense, why hadn't someone done this for 10 years? After the invention was used, there's testimony in the record showing that it was very successful. The testimony from the circuit check employees testified that they used the invention to drive sales. There's evidence in the record that they tested the equipment at a mutual customer with QXQ, that customer's Plexus. The equipment was tested in 2003 at Plexus and in 2004 QXQ's owner, he testified that in 2004 he was asked by Plexus to make the invention. So QXQ had access to the invention and they started making something identical to it. The case law allows an inference that there was copying. Copying would also support the jury's verdict. I notice there are more than a dozen references cited in the prosecution of this patent. Was there extensive... Were these relevant art and was there extensive prosecution and amendment? There was an extensive prosecution history. In the first patent, I believe there were two or three office actions, if I'm not mistaken. The prior art was before the examiner. The prosecuting patent attorney testified at trial about what happened at prosecution, what was considered. Actually, one of the most pertinent prior art reference was in the patent itself. It's called Figure 1 in the patent. It shows marking by painting. The prosecuting attorney, Mr. Lasky, also testified that the patent office had a reference that showed drilling. So the patent office and the examiner had both painting and drilling before him, the same evidence that was presented at trial as the primary prior art reference. The examiner allowed, obviously, the patent to issue in two continuations. The pertinent prior art, the same prior art that was argued about at trial, was presented to the patent office. It allowed the invention to issue Were there rejections in the prosecution on obviousness grounds? There were rejections on obviousness and anticipation based upon what in the prosecution history is referred to as the admitted prior art, and that's the Figure 1 in the patents, is the best of my recollection. The issue hasn't been developed as much on appeal, but there were rejections based upon that prior art reference. And the Figure 1 was what? Figure 1 shows the plastic-based plate. It's an unmarked plate. And then Figure 1 shows painting around the hole. So the primary prior art was painting around the hole or drilling around the hole. And there's testimony from Stagger, the inventor, as well as Neil Adams, who's another engineer and employee of CircuitCheck, that automatic drilling using a CNC machine had been around for 10 years. When the machine that came out, called the Agilent 3070 that uses this type of interface plate, 10 years ago, people were marking and drilling. And it wasn't until CircuitCheck came along 10 years later and said, let's combine the two, then we can use the automatic drilling machine to quickly mark the interface plate. Because the problem with the prior art was that it was labor-intensive and it was inaccurate. Well, the district court, in his decision, granting judgment as a matter of law, he said that there was a motivation to combine the references, and that motivation, the district court found, was the automatic drilling machine. That's the very benefit that's described in the patent. We submit that that is classic hindsight. The benefit of the invention is that you can use the automatic drilling machine, save time, be more accurate, and the judge said that's the motivation to combine. He found that in his basis. Again, the jury was instructed on motivation, they were instructed on teaching away, they were instructed on all of the issues for obviousness. So the basic difference between this and the prior art is the difference between marking the holes with paint and marking the holes by removing paint. Yes. I mean, that's the primary difference. And no one, until CircuitCheck applied it, had applied the concept, what the judge called common sense, before CircuitCheck did. And we submit that the secondary considerations of non-obviousness support the verdict. And that's what the judge... In fact, wasn't one of your arguments that the prior art suggested that paint was expensive and that paint could chip off and get into the holes and thereby interfere with the ability to check, so why would it have been obvious to put actually more paint on the whole surface? The prior art had only a small amount of paint around each hole, and what this invention did was decide to actually coat the entire surface with paint. That's precisely the argument that we made for teaching away, and there's testimony from technical people, both skilled in the art, that was presented by QXQ... What is somebody skilled in the art? I was racking my brain yesterday. It didn't seem to be the subject of any dispute among the parties that I could identify, but nobody sort of talks about it. I mean, this isn't the circuit checker. This is the board that goes on top the circuit checker to show which pins to push up. So, who is somebody of skill in the art for this? The person of skill in the art is a person who designs what they call a test fixture. So, if you imagine, there's three main components. There's the plate... But he doesn't have... This person doesn't have to be an electrical engineer necessarily. Like, to build a circuit checker, I would think you would need an electrical engineer or an electronics engineer, but you're just talking about the guy or the person who builds the board. Well, Scott Staggert is the inventor who invented the invention, and he has a degree in industrial technology from a four-year college, and he builds what they call test fixtures. It's the interface between the circuit board being tested and the large machine. So, the person... No, as the party, the plaintiff, we felt it's not our burden to prove who is a person of skill in the art. That was the burden for the defendant. Well, I don't see any argument, at least unless I missed it. Is there any argument that's been presented to this court that demonstrates a dispute that is meaningful about what the level of skill in the art is? No, no. I just want to make sure. I was just curious. Yeah, the district court in QXQ said the person of ordinary skill in the art was anyone. It doesn't matter who the person is because the invention is common sense. You're eating up your rebuttal time. Oh, I will reserve the rest of my time for rebuttal. We will save it for you. Mr. Merrill, Mr. Harrison. Thank you, Your Honor. May it please the court. I will try to address the points that were made by opposing counsel as much in order as possible. First of all, he said there was only testimony of QXQ on the issue of using the Prussian blue technique and it showed that there was only use of Prussian blue outside of the field of endeavor. In fact, Mr. Wexler testified and he was an owner of a company that made test fixtures at the time, testified that his company used Prussian blue in machine work long before the invention of the present invention. You'll find that testimony at A1801 and 1802 in the appendix. Mr. Merrill says that there was proof or there was some evidence of copying There was no evidence of copying. There is an inference that he would like to draw from the mere fact that something could have happened. No one testified that it did happen. In fact, the president of CircuitCheck said that he could speculate what happened. He didn't say that he knew copying had occurred. But weren't these all questions for the jury? Yes. Yes, certainly. A question of whether they could or could not have had access. And so the trial judge should not have overridden the jury based on common sense. I don't think it's correct to characterize that as the judge overriding on common sense. I think he carefully followed the Graham factors. He applied them all, discussed them all. And he was applying the law that says if no reasonable jury could find it a particular fact then it's appropriate for judgment as a matter of law. Indeed, this court's opinion in Weyers versus Masterlock says the same thing. It says very clearly cases where there's no dispute no real dispute over issues of the scope of the art one's skilled in the art things of that nature, there's no real dispute of that it's an appropriate case to use common sense to support a judgment as a matter of law or summary judgment. That is, Weyers versus Masterlock. Um the court asked to excuse me the question of whether there was prior art before the examiner in the patent office there was as Mr. Merrill described that art there was not any art concerning the motivation to combine and that is what the examiner eventually would say at the end of all the back and forth on a particular rejection well I can't find anything that says there is a motivation to combine these things and by the way the examiner did not have the best the best art before her she did not have a copy of the plexus specifications that we have referred to and those are exhibits 22, 24, 25 which are found in in the appendix she did not have those documents before her and all those documents show some aspect of using paint drilling holes and they include phrases that at the very least suggest that it was a good idea to mark a a plate to mark an alignment plate so that it would help with inspection and repair and those references were before the jury? they were the I would like to particularly point to one of them if I may it says that someone who has excuse me I would also want to while I'm noticing this in passing comment that Mr. Mr. Staggart himself knew about the Prussian blue technique and as a junior high shop student he knew that that was a technique that could be used for marking and on the subject since I used the word marking I want to emphasize that this is about marking it's not about electronic circuits it's about marking a very mechanical process that's not entirely correct though, right? it's about marking a device that's going to be used with electronic circuits so you have to be sensitive to understanding the use for example that issue about paint chipping off which would interfere with the pin's ability to detect the accuracy of a circuit that it's trying to check so you're right it's about marking but you have to know what you're marking it's like saying finger painting is about painting and house painting is about painting I mean obviously you know, what my my kids are going to finger paint a piece of paper the paint doesn't have to be waterproof for example but house paint does so it does matter what you're marking you're marking a circuit check interface board you have to take don't you have to didn't the jury have to take that into account in understanding yes certainly you do that is what we argued before the district court and argued in our briefs that this is this is the process one uses every time one selects a coating of any kind you don't you don't pick an inappropriate coating you choose one that matches the surface that's true of house painters as well as people who put paint on alignment plates but it's a routine process it is an invention to do that it's a routine process to choose paint that won't chip it is, yes I think I mean that would be one of the characteristics that anyone who is applying paint to anything would want they want it to stick well they want it to not fall off they want it to be resistant to whatever forces it's liable to come in contact with so those are things you take into account if you're painting a space shuttle you have a different problem than if you're painting a house or an alignment plate those are those are the routine things that someone goes through choosing a coating for anything I would think that's the most the most basic thing that what is the record show about using the appropriate paint to avoid chipping what is the record of the trot well the record shows a number of different things about the use of paint including that the three prior arts statement of work references we have been referring to all require in some way use of paint so the industry is telling part of the industry is telling the suppliers that you should use paint on these alignment plates in order to mark them it can't be a new idea to use to use paint and the fact that it's already approved and in fact demanded in some places by these statements of work certainly indicates that paint is not taught away from it's taught toward if anything I'm sorry did I answer the question that your honor asked what was the well I guess was there specific evidence about the knowledge of paint in the prior art that wouldn't chip or flake I would say that was not made as a big deal in the trial but there were mentions of the use of paint before and after all kinds of variations of the use of paint or non-use of paint and in connection with the argument that there was success or great commercial success there was no way that the testimony that was applied could apply to prove or disprove that there was commercial success and as in Weyer's case the proof of a fairly substantial amount of sales was not connected to the invention there is no nexus as the cases say if I sorry I'm jumping around a little bit the pertinence claim that Circuit Check has argued they say that there is that all three of the exemplars that we used that include the rock carvings the Prussian blue and engraved signage by the way there are exemplars of the engraved signage all over this courtroom and all over this courthouse these are the signs on the council table possibly the judges name signs there but these are made by they're not saying that's evidence of obviousness I'm saying it's common knowledge because these things are used everywhere and they have been for decades but in addition to the fact that they are known in other areas the use of Prussian blue as I mentioned earlier is in the field of endeavor because it was used as I said by Mr. Wexler's company ATE decades before the invention anything further Mr. Harrison I'm just checking to see I'd be most appreciative if the court has any questions let me know what they are no one ever gets any black marks for not using up all of their time so we'll hear Mr. Merrill if he has any rebuttal there was testimony in the record about the testing of paint to make sure it worked and that's where the it's actually connected to the evidence of what we believe is copy the invention was tested at customers including one of the mutual customers as well as others to make sure it worked first because we were very concerned that it wouldn't work and the customers who are skilled in the art the customers are engineers that's where the testimony by the president Mr. Michalko he speculated whether they copy that's not what we're relying upon we're relying upon that the QXQ had access to the invention at our customer this case is not wires for two reasons and wires he did not show commercial success a nexus to the commercial success here we have the nexus we were able the jury decided that there was lost profits damages there was testimony that the invention drives sales but for the invention the sales were made there's all unlike wires there is what we talked about earlier evidence of copying wires didn't have evidence of copying he had argued that the sales by the defendant was somehow evidence of copying he doesn't have the connection that we do here there's also there was testimony about the importance of bonding bonding is a dependent claim I believe it's claim 11 of the 796 patent it says that it's the coding and removal method and then the coding is bonded the patent itself in the record it talks about types of paints that are suitable for this type of invention by the way there was no evidence challenging certain of these dependent claims it just wasn't put on we relied upon the presumption of validity for claims 5 and 11 there was no evidence on them submitted by QXQ the examiner had evidence of before her about the automatic drilling system that it's in the patent it's in the specification of the patent it talks about the benefit of the invention the automatic drilling system was known prior art right? yes it was described in the specification as a method for drilling and it was a prior art reference for 10 years people had drilled with automatic drilling systems thank you unless you have any other questions thank you Mr. Merrill we'll take the case